IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ALBERTO CHRISTOPHER LESLIE,

      Petitioner,

v.                                                    CASE NO. 3:17-cv-762-RV-GRJ

SECRETARY, FLORIDA DEP'T
OF CORRECTIONS,

      Respondent.

_____/

## **REPORT AND RECOMMENDATION**

This case is before the Court on Petitioner's counseled Petition for a

Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1

("Petition").  The Petition stems from Petitioner's Escambia County

conviction for manslaughter and possession of a firearm by a convicted

felon, for which he is serving a total sentence of 40 years' imprisonment.

*Id.*  Respondent has filed a response and appendix with relevant portions of

the state-court record, and Petitioner has filed a reply.  ECF Nos. 12, 22.

Upon due consideration of the Petition, the response, the reply, and the

state-court record, the undersigned recommends that the Petition be

denied.[1]

---

[1] The Court has determined that an evidentiary hearing is not warranted because
the Court may resolve the Petition on the basis of the record. *See* Rule 8, Rules
Governing Habeas Corpus Petitions Under Section 2254.

# I. **State-Court Proceedings**

On July 8, 2010, Petitioner was charged with one count of second-degree murder with the discharge of a firearm and one count of possession of a firearm by a convicted felon.  ECF No. 12-1 at 42.  The charges were severed before trial.  *Id.* at 230.  Trial commenced on August 8, 2011.  ECF No. 12-2 at 47.  The relevant trial evidence may be summarized as follows.

On June 10, 2010, around 9:00 p.m., law enforcement received a call that shots were fired in the Twin Oaks apartment complex.  When police arrived, the victim was laying on the ground, unresponsive.  Petitioner and several witnesses were present.  The victim was identified as Brandon Stovall.  The Twin Oaks security officer, Russell Hines, identified Petitioner as the shooter and he was placed in handcuffs.  A responding officer recovered a Colt .32 handgun from the ground and attempted CPR on Stovall, but he died at the scene.  ECF No. 12-3 at 103-29.

The medical examiner determined that the cause of Stovall's death was four gunshot wounds to the head, estimated to have been fired from between five and fifteen feet away.  *Id.* at 170-93.  The forensic evidence did not establish that the victim had handled or fired a gun.  *Id.* at 199-218.

Prosecution witnesses testified that Stovall went to Twin Oaks with Gregory Brown to visit a friend.  Brown drove the men, and he denied that they  were armed.  He testified that he had never been warned about

trespassing at Twin Oaks by the security officer, Hines.  Stovall exited

Brown's car because he saw someone he said owed him money.  Brown

heard the gunfire, and drove off to call police.  *Id.* at 232-62.  Other

witnesses testified that Stovall approached Petitioner and accused him of

either robbing or hitting Stovall in a store.  The men began arguing, and

some of the witnesses walked away.  Hannis Figures testified that as he

was walking away, he heard gunshots and turned back to see Petitioner

shoot Stovall.  *Id.* at 264-85.  Another witness testified that he heard

Petitioner tell Stovall "I'm going to mess you up."  *Id.* at 304-33.  Hines saw

Petitioner holding the gun immediately after the shooting.  *Id.* at 334-54.

The defense theory was that Petitioner acted in self-defense based

on past aggressive acts by Stovall.  Petitioner's girlfriend Desiree Martin,

who lived at Twin Oaks with Petitioner and their child, testified that she

previously saw Stovall walking up and down the sidewalk outside their

apartment, waiting for Petitioner.  She testified that on another occasion

Tabius Huff and Stovall came to their apartment with 15 to 19 armed men

in three cars.  Tabius threw eggs at their door, and demanded that

Petitioner come out.  The incident placed Martin and Petitioner in fear.  She

called law enforcement, but nothing was done.  She testified that Tabius

and Stovall harassed Petitioner on other occasions before Stovall was

killed.  She denied that Petitioner had "sucker punched" Stovall in a store

previously.  ECF No. 12-4 at 33-76.  Petitioner's mother testified that Stovall and Tabius Huff pointed a gun at them earlier on the day of the shooting.  She provided Petitioner with a gun afterward. *Id.* at 84-104.

Petitioner testified in his own behalf.  The trial court conducted a colloquy with Petitioner to determine that he understood the advantages and disadvantages of testifying and that he had the right not to testify.  *Id.* at 182-83.  Petitioner testified that Stovall had threatened him and had pulled a gun on him several times before the night of the shooting, though he admitted on cross-examination that he never called the police.  He said that Stovall had chased him through the complex, and would sit and wait for Petitioner.  Stovall said he would kill Petitioner.  Petitioner testified that he informed Hines of the incidents.  Petitioner testified that on the night of the shooting he was staying inside because he feared for his life.  He saw some men he knew so he went downstairs to join them.  When Stovall arrived, he got out of the car and said he would blow Petitioner's brains out. Petitioner testified that Stovall was "faking like he had a gun," and he believed Stovall had a gun because he was hiding his hands.  Petitioner did not run back to his apartment because he thought Stovall would shoot him. He admitted that he never saw Stovall with a gun or weapon the night he was killed, and that Stovall never made physical contact with him.  *Id.* at 215-244.

The State called Hines as a rebuttal witness.  Hines testified that on one occasion a lone black male threw an egg at Petitioner's apartment.  Hines testified he never received complaints from Petitioner or Martin about people threatening them or harassing them in Twin Oaks.  *Id.* at 248-54.

Tabius Huff testified that he threw eggs at Petitioner's apartment on one occasion, but he did not know Stovall.  About 10 to 15 people watched him throw eggs, but did nothing more than watch. *Id.* at 255-70.  Deputy Phillip Folmar testified that according to a dispatch report he responded to an egg-throwing incident at Twin Oaks, but he did not recall the incident.  If he had responded to Twin Oaks and received a report that 15 to 19 people with guns were involved, he would have asked for assistance by other units.  The report indicated that Martin had called dispatch asking for assistance.  *Id.* at 271-76.

Petitioner was found guilty of the lesser-included offense of manslaughter.  Prior to sentencing, he pled guilty to possession of a firearm by a convicted felon.  He was adjudicated guilty and sentenced to 30 years for manslaughter and a consecutive 10-year sentence for the felon-in-possession charge.  Petitioner appealed, arguing, *inter alia,* that the trial court erred by excluding an out-of-court statement by Martin concerning whether she had reported threats by Stovall and that some of the prosecutor's comments on the defense evidence during closing argument

were improper.  ECF No. 12-5 at 39.  The First DCA affirmed the

convictions *per curiam,* without a written opinion.  *Id.* at 136.

Petitioner, through counsel, sought postconviction relief pursuant to

Fla. R. Crim. P. 3.850, asserting that his trial counsel rendered ineffective

assistance by failing to move for a competency hearing before trial.  ECF

No. 12-6 at 44-52 (amended Rule 3.850 motion).  Petitioner also moved for

a competency hearing.  *Id.* at 29-31.  The trial court struck the motion for a

competency hearing as insufficient.  *Id.* at 32-33.  The trial court summarily

denied the Rule 3.850 motion without an evidentiary hearing.  ECF No. 12-

6 at 55-56.

Petitioner, through counsel, filed the instant federal habeas corpus

petition, which Respondent concedes is timely and exhausted.  Petitioner

asserts three claims for relief:  (1) Petitioner was not competent to proceed

to trial or plead no contest, and counsel was ineffective for failing to request

a competency hearing; (2) The trial court erred by excluding Martin's out-of-

court statement as hearsay; and (3) The prosecutor made improper and

prejudicial comments during closing arguments.  ECF No. 1.

## II.  Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state

prisoner's application for a writ of habeas corpus based on a claim already

adjudicated on the merits in state court unless that adjudication "resulted in

a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow,* 571 U.S. 12*,* 18 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 571 U.S. at 18-19 (standard for reviewing claims of legal error by state courts is "highly deferential"). This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Id.*

This highly deferential standard carries special force in habeas cases asserting ineffective-assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under

*Strickland*[2] —a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976)).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Id*. at 15-16 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "'If this standard is difficult to meet'—and it is---'that is because it was meant to be.'" *Id*. at 16 (quoting *Harrington*, 562 U.S. at 102). "We will not lightly conclude that a State's criminal justice system has experienced the

---

[2] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong).

'extreme malfunction' for which federal habeas relief is the remedy." *Id*.

(quoting *Harrington*, 562 U.S. at 102).

Further, when reviewing state-court decisions on habeas review, if a

state appellate court issues a silent affirmance, "the federal court should

'look through' the unexplained decision to the last related state-court

decision that does provide a relevant rationale" and "presume that the

unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138

S.Ct. 1188, 1192 (2018).

### III. <u>Discussion</u>

### *Ground One: Ineffective Assistance of Trial Counsel*

As he alleged in state court, Petitioner contends that he was not

competent to proceed to trial or to enter a no contest plea to the firearm

charge, and therefore his counsel was ineffective for failing to properly

evaluate him and request a competency hearing pursuant to Fla. R. Crim.

P. 3.210.  Petitioner's Rule 3.850 motion explained that his postconviction

counsel had retained a psychologist to evaluate him in January 2015.  The

motion summarized the psychologist's findings, but Petitioner's counsel did

not submit the report itself.  *See* ECF No. 12-6 at 44-53.  Counsel argued in

the motion:

> As initially observed by undersigned counsel – and confirmed by the
> psychologist – it is obvious in talking to the Defendant that the
> Defendant is intellectually disabled (and thus it also must have been

obvious to defense counsel). It is also obvious that the Defendant does not comprehend information very well. A minimal investigation into the Defendant's background reveals that the Defendant only advanced in school to the eighth grade, and he was always enrolled in special education classes (he was diagnosed by the school system as "mentally handicapped"). The school system gave the Defendant an IQ test and the result was a full scale score of 66 (significantly subaverage as defined by Florida Statutes). *Notably, to this day, the Defendant does not know how to read and write*. Because the Defendant is by definition "intellectually disabled," he was not able to properly comprehend the legal system, he was not able to participate during the trial (i.e., he could not provide thorough information to defense counsel and he was not able to integrate information from day to day to inform his contributions), and he was not able to adequately defend himself. Defense counsel rendered ineffective assistance of counsel by failing to properly evaluate the Defendant and failing to argue that the Defendant was incompetent and failing to request a hearing pursuant to rule 3.210. Based on the foregoing clear and convincing circumstances, there is a real, substantial, and legitimate doubt as to the Defendant's competency at trial.

*Id.* at 48-49. (emphasis in original).

Petitioner argues that there is nothing in the record that refutes his claims that a psychiatrist concluded he is "intellectually disabled", he has an IQ score of 66, and he cannot read or write. According to Petitioner, these claims must be accepted as true. Petitioner asserts that as a result of being intellectually disabled he was not able to properly comprehend the legal system, he was not able to participate effectively during the trial, and he was not able to adequately defend himself. He contends that "[i]t follows that defense counsel rendered ineffective assistance of counsel by failing to properly evaluate Petitioner Leslie and failing to argue that

Petitioner Leslie was incompetent and failing to request a hearing pursuant to rule 3.210." ECF No. 1 at 9. Petitioner further contends that he is entitled to an evidentiary hearing on this claim because the state court did not afford him a full, fair, or adequate hearing to resolve it. *Id.* at 12.

Although he did not submit the psychiatrist's report to the state court, Petitioner filed a redacted copy with this Court. ECF No. 23-1. The Respondent moved to strike the report on the grounds that this Court's review is limited to the record that was before the state court that adjudicated the claim on the merits. ECF No. 24 at 6-7 (citing *Cullen v. Pinholster,* 563 U.S. 170, 181 (2011)). The Respondent further contends that the report is not relevant, because the evaluation took place in 2015 after Petitioner had been in prison for a number of years, and the psychiatrist did not evaluate Petitioner's condition at the time of trial. *Id.* at 7.

The state court accepted as true Petitioner's factual allegations that he is "'intellectually disabled', does not 'comprehend information very well,' has an eighth grade education, and cannot read or write" as well as his allegation that "he has an IQ of 66, and was enrolled in special education classes throughout his youth." ECF No. 12-6 at 54-55. The state court nevertheless rejected his claim that counsel was ineffective for not seeking a competency hearing, quoting at length from *Thompson v. State,* 88 So.3d

312, 318-320 (Fla. 4th DCA 2012):

> Courts . . . have recognized postconviction claims of ineffective assistance of counsel in connection with counsel's handling of a defendant's competency to proceed. *See, e.g., Jackson v. State,* 29 So.3d 1161 (Fla. 1st DCA 2010); *Coker v. State,* 978 So.2d 809 (Fla. 1st DCA 2008). We now clarify the standard that applies to such a claim.

> To establish ineffective assistance of counsel, the movant must show both counsel's deficient performance and actual prejudice. *See generally* [*Strickland v. Washington*] . . . To satisfy the deficiency prong based on counsel's handling of a competency issue, the postconviction movant must allege specific facts showing that a reasonably competent attorney would have questioned competence to proceed. . . . Conclusory allegations of incompetency are not enough to warrant an evidentiary hearing. *See Atwater v. State,* 788 So.2d 223, 229 (Fla.2001). "[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." *Card v. Singletary,* 981 F.2d 481, 487–88 (11th Cir.1992). "[N]either low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." *Medina* [*v. Singletary,* 59 F.3d 1095, 1107 (11th Cir. 1995)]

> The prejudice standard that applies to a typical claim of ineffective assistance of counsel, whether a reasonable probability exists that the outcome of the proceeding would differ, is ill-suited to a claim of alleged incompetency. The issue is not whether the outcome of the trial would have differed. . . . The issue is not whether, had counsel acted differently, the court would have been required to hold a competency hearing under Rule 3.210. The focus of the prejudice inquiry is on actual prejudice, whether, because of counsel's deficient performance, the defendant's substantive due process right not to be tried while incompetent was violated. In order to establish prejudice in a properly raised ineffective assistance of counsel claim, the postconviction movant must, as with a substantive incompetency claim, **set forth clear and convincing circumstances that create a real, substantial and legitimate doubt as to the movant's competency.** *Cf. Luckey v. State,* 979 So.2d 353, 354 (Fla. 5th DCA 2008) (holding that ineffective assistance of counsel claim was

> insufficient where defendant had not alleged actual incompetency);
> *see also Gillis v. State,* 807 So.2d 204 (Fla. 5th DCA 2002); *Baker v.
> State,* 404 So.2d 1151 (Fla. 5th DCA 1981) (recognizing that
> conclusory and uncorroborated postconviction claims alleging
> incompetency were insufficient to warrant an evidentiary hearing).

ECF No. 12-6 at 55 (quoting *Thompson*, 88 So. 3d at 318–20) (internal

citations omitted) (emphasis added).

The state court found that the facts alleged by Petitioner—assumed

to be true—did not "create a real, substantial and legitimate doubt" as to

Petitioner's competency.  The court noted the Supreme Court's observation

that intellectually disabled people "frequently know the difference between

right and wrong and are competent to stand trial."  *Id.* at 56 (citing *Atkins v.*

*Virginia,* 536 U.S. 304, 318 (2002), and *Nixon v. State,* 2 So.3d 137, 144

(Fla. 2009)).

The state court further held that:

> [T]he record lends no support to a conclusion that counsel should
> have been aware of a potential competency issue.  At trial, Defendant
> testified articulately and in detail regarding his claim of self-defense.
> At sentencing, Defendant also testified on his own behalf, and a letter
> from Defendant was read by counsel, outlining Defendant's family
> history and his explanation for the events leading up to the victim's
> death.  Consequently, based on the foregoing the Court concludes
> that Defendant is not entitled to relief.

*Id.* at 56 (citing the transcripts of Petitioner's trial testimony and plea and

sentencing hearing).

On this record, the state court's rejection of this claim is not "so

lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt*, 571 U.S. at 15-16 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  As to the contents of the state-court record, there is no basis for this Court to supplement the record with the redacted psychiatrist's report offered by Petitioner, because the report was not submitted to the state court and the postconviction court in any event accepted as true Petitioner's factual allegations that he is intellectually disabled, has a low IQ, and cannot read or write. *See* Rule 7, Section 2254 Rules (authorizing the Court to "direct the parties to expand the record by submitting additional materials relating to the petition").

"The Due Process Clause of the Fourteenth Amendment prohibits states from trying and convicting mentally incompetent defendants." *Medina*, 59 F.3d at 1106. The standard for competency to proceed at trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960); *Godinez v. Moran*, 509 U.S. 389, 396, 402 (1993) (same, guilty-plea context); *see also Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist

in preparing his defense may not be subjected to a trial."). Petitioner's intellectual limitations alone are not enough to establish that he was incompetent to be tried or plead guilty. *See Medina*, 59 F.3d at 1107 ("Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.") (quotation marks and alterations omitted); *Bolius v. Wainwright*, 597 F.2d 986, 990 (5th Cir. 1979) ("[T]he mere presence of mental illness or other mental disability at the time [the defendant] entered his plea does not necessarily mean that he was incompetent to plead").

The Eleventh Circuit has explained that a "defendant's attorney is in the best position to determine whether the defendant's competency is suspect," which means that the failure of Petitioner's counsel "to raise the competency issue . . . while not dispositive, is evidence that [his] competency was not really in doubt and there was no need for" a competency hearing. *Watts v. Singletary*, 87 F.3d 1282, 1288 (11th Cir. 1996); *see also Pompee v. Sec'y, Fla. Dept. of Corr.*, 736 Fed.Appx. 819 (11th Cir. 2018).[3]

Here, Petitioner points to nothing in the record that suggests his

---

[3] Pursuant to 11th Cir. Rule 36-2, unpublished opinions are not binding but may be cited as persuasive authority.

intellectual difficulties prevented him from effectively consulting with his lawyer and having a reasonable degree of rational and factual understanding of the proceedings at trial, during his plea, or at sentencing. The state court characterized Petitioner's trial testimony as "detailed" and "articulate" regarding his claim of self-defense. The court observed that Petitioner also testified in his own behalf at sentencing and that a letter from Petitioner was read by counsel, outlining Petitioner's family history and his explanation of the events leading to Stovall's death.  ECF No. 12-6 at 56.

In addition to the foregoing, the record also reflects that Petitioner affirmed that he was able to consult with counsel about testifying, understood his right not to testify, and understood the consequences of testifying.  ECF No. 12-4 at 182-83.  Petitioner's plea to the firearm charge was taken immediately before sentencing on both offenses, and he expressed no lack of understanding of the proceedings or confusion about the consequences of his plea.  Petitioner candidly volunteered to the court that "if I go to trial, I am going to lose. . . . I'm guilty on that all day".  ECF No. 12-1 at 259.   The totality of these circumstances reflect that Petitioner "had a rational understanding of the proceedings against him and, as a result, counsel did not act unreasonably in failing to ask for [a] competency hearing."  *Pompee,* 736 Fed.Appx. 819 at *824 (citing *Godinez,* 509 U.S. at

396–99, 402; *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1259

(11th Cir. 2002) ("The best evidence of [the defendant's] mental state at the

time of trial is the evidence of his behavior around that time, especially the

evidence of how he related to and communicated with others then.")).

Petitioner's claim also fails on the prejudice prong of *Strickland*.  To

show prejudice, Petitioner must establish that "there was a reasonable

probability that he would have received a competency hearing <u>and</u> been

found incompetent had counsel requested the hearing." *Lawrence v. Sec'y,

Fla. Dep't of Corr.,* 700 F.3d 464, 479 (11th Cir. 2012) (emphasis in

original).  There is no evidence that the state court would have held a

competency hearing had Petitioner's counsel requested one, or that he

would have been found incompetent due to his intellectual limitations.  As a

result, Petitioner cannot establish that any alleged deficient performance

prejudiced him. *See Pompee,* 736 Fed.Appx. 819 at *824-25.

In sum, because Petitioner cannot establish deficient performance or

prejudice, he is not entitled to federal habeas relief on this claim.

### Ground 2: Trial Court Error Regarding Martin's Testimony

Petitioner contends that the trial court erred by not permitting Desiree

Martin to testify as to her own out-of-court statement.  As summarized

above, Martin testified about prior incidents of threats and harassment

against Petitioner by Stovall and others. She testified that she brought the

matter to the attention of Hines, but at trial he denied receiving such complaints.  Petitioner's trial counsel attempted to introduce evidence that on the night of the shooting and in the 911 tape conversation, Martin could be heard yelling and telling Hines, "we told you. You didn't do anything and we told [sic] you."  ECF No. 1 at 14; *see* ECF No. 12-3 at 100-01.  The trial court held that the out-of-court statements were inadmissible hearsay.  *Id.*

A state trial court's evidentiary rulings do not provide a basis for federal habeas relief absent a showing that the ruling affected the fundamental fairness of the trial.  *See Sims v. Singletary*, 155 F.3d 1297, 1312 (11th Cir. 1998).   A Petitioner must show that the ruling was more than merely erroneous; it must have had "'[a] substantial and injurious effect or influence in determining the jury's verdict.'" *Id*.  (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

Upon review of the trial record, this Court concludes that there is no possibility that the trial court's ruling rendered Petitioner's trial fundamentally unfair.  In addition to Martin's own testimony, Petitioner and other witnesses testified in support of his claim that Stovall and his associates had threatened and harassed Petitioner.  Further, even if the trial court erred by ruling that the statements by Martin on the 9-1-1 call were inadmissible hearsay, thereby precluding counsel from questioning Martin about them, the 9-1-1 call itself was admitted into evidence and

available for the jury to hear.  *See* ECF No. 12-4 at 180-81.  On this record,

Petitioner has failed to show that the state court's rejection of this claim

was contrary to, or an unreasonable application of, federal law, or an

unreasonable determination of the facts in light of the evidence contained

in the state court record.

### Ground 3:  Improper Statements by Prosecutor

Petitioner contends that the prosecutor made improper and

prejudicial comments during closing argument that amount to prosecutorial

misconduct.  The comments are as follows:

> The first thing, there is no connection, zero, zero connection between
> Brandon Stovall and Tabius Huff. The only witnesses that said
> anything like that is Mr. Leslie, his girlfriend, and his mom. His
> mamma didn't even know who they are. She just said that because
> [Petitioner] and Desiree told her "Oh, that's who it was."

> Desiree didn't know who the victim was, didn't know who it is, but
> goes to the police office, knows "I have a beef with Tabius Huff. Let
> me tell him about his stuff. And, oh, that guy was there too."
> [Petitioner] obviously fell in like with that.

> None of these witnesses were good friends with Brandon. His
> mother, Caesar, Larry, they have never heard of this guy TB, Tabius
> Huff, because it's not there. The relationship that they need to
> promote this defense is just not there.

> Tabius himself said, "I have never heard of the guy. I don't know him."
> He admits to the egging. He said he went over there. He thinks it was
> in a rental car; it might have been his Cadillac, he said. He goes over
> by himself looking for the guy that's been talking about him; they have
> a beef; they have problems, he freely admits that. He goes up and
> throws eggs at him. He doesn't come out, and he leaves. No 15 to
> 19 guys with guns. Again, just a creation to get the verdict they want

out of you.

ECF No. 12-4 at 697-98.

Petitioner's counsel objected to the comments and asked for a curative instruction, which the court denied stating "[t]hat is argument." *Id.* Petitioner contends that it was impermissible to suggest, without evidentiary support, that a witness testified due to the contact with the defendant and or defense counsel, and that such comments suggest the prosecutor has unique knowledge that has not been presented to the jury and are highly prejudicial. ECF No. 1 at 16-17 (citing *Penalver v. State*, 926 So.2d 118 (Fla. 2006); *Tindal v. State*, 803 So. 2d 806 (Fla. 4th DCA 2001); and *Jones v. State*, 449 So. 2d 313 (Fla. 5th DCA 1984)).

It is well-settled that improper jury argument by the prosecution violates a defendant's constitutional right to a fair trial in some circumstances. *See, e.g., Cronnon v. State*, 587 F.2nd 246, 251 (5th Cir. 1978). "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Davis v. Kemp*, 829 F.2d 1522, 1527 (11th Cir. 1987). The Court applies a two-step process in reviewing such a claim: (1) the Court considers whether the argument was improper; and (2) whether any improper argument was so prejudicial as to render the trial fundamentally unfair. *Id*. at 1526. Thus, "'[t]he relevant question is whether

the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 1526-27 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). A trial is fundamentally unfair if there is a reasonable probability that but for the prosecutor's improper remarks, the outcome of the trial would have been different. *Williams v. Kemp*, 846 F2d 1276, 1283 (11th Cir. 1988).

As the State contends, the prosecutor's remarks in this case flowed from the testimony of the State's witnesses who undermined Petitioner's claim that Stovall was an associate of Tabius Huff, the person engaged in the egg-throwing incident. The defense sought to establish Huff's actions as one of the incidents that caused Petitioner to fear Stovall, but the only witnesses who connected Stovall with Huff were Petitioner, Martin, and Petitioner's mother.

In view of the testimony underlying the prosecutor's argument, the arguments were not clearly improper. Further, considering the trial evidence as a whole, this Court cannot conclude that any improper argument was so prejudicial as to render the trial fundamentally unfair. On this record, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of, federal law, or an unreasonable determination of the facts in light of the evidence contained in the state court record.

## IV.  <u>Certificate of Appealability</u>

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V. <u>Conclusion</u>

For the foregoing reasons it is respectfully **RECOMMENDED** that the

Petition for Writ of Habeas Corpus, ECF No. 1, should be **DENIED**, and

that a certificate of appealability should be **DENIED**.

**IN CHAMBERS** this 23rd day of February 2021.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations
must be filed within fourteen (14) days after being served a copy
thereof. <u>Any different deadline that may appear on the electronic
docket is for the court's internal use only, and does not control.</u>  A
copy of objections shall be served upon all other parties.  If a party
fails to object to the magistrate judge's findings or recommendations
as to any particular claim or issue contained in a report and
recommendation, that party waives the right to challenge on appeal
the district court's order based on the unobjected-to factual and legal
conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**